## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

**ROGER EDWARD LONG,**

      **Plaintiff,**

**vs.**                                                 **CIVIL ACTION NO. 1:19-CV-00737**

**ANDREW SAUL,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered October 11, 2019 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support of Motion for Judgment on the Pleadings (ECF Nos. 13, 14), as well as Defendant's Brief in Support of Defendant's Decision (ECF No. 15).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** Plaintiff's motion to the extent that he requests remand (ECF No. 13), **DENY** Defendant's request to affirm the decision of the Commissioner (ECF No. 15); **REVERSE** the final decision of the Commissioner; and

1

**REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Roger Edward Long (hereinafter referred to as "Claimant"), protectively filed his application for Title II benefits on May 10, 2016 alleging disability beginning January 21, 2016 due to a right hand injury, left elbow injury, "left ankle joint fused", psoriatic arthritis, and fatty liver disease. (Tr. at 36, 209-210, 228) His claim was initially denied on June 21, 2016 (Tr. at 133-137) and again upon reconsideration on August 18, 2016 (Tr. at 142-148). Thereafter, Claimant filed a written request for hearing on August 25, 2016. (Tr. at 149-150)

An administrative hearing was held on March 7, 2018 before the Honorable Nathan Brown, Administrative Law Judge ("ALJ"). (Tr. at 93-112) On October 24, 2018, the ALJ entered an unfavorable decision. (Tr. at 33-51) On October 30, 2018, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 202-205) The ALJ's decision became the final decision of the Commissioner on August 13, 2019 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7)

On October 10, 2019, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) Defendant (hereinafter referred to as "the Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 8, 9) Subsequently, Claimant filed a Motion for Judgment on the Pleadings and a Memorandum in Support of Motion for Judgment on the Pleadings (ECF Nos. 13, 14), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (ECF No. 15) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 35 years old as of the alleged onset date and would be defined as a "younger person" throughout the underlying proceedings. See 20 C.F.R. § 404.1563(c). (Tr. at 45) Claimant has a high school education and last worked at an Ethan Allen warehouse loading boxes onto tractor trailers and shipping them out. (Tr. at 230, 97-98)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c). Those Sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of

Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision

must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ found Claimant met the insured status requirements through December 31, 20121. (Tr. at 38, Finding No. 1) Next, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since January 21, 2016, the alleged onset date. (Id., Finding No. 2) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: fracture of lower extremity; fracture of upper extremity; psoriatic arthritis; and obesity. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 39, Finding No. 34 The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except

walking/standing no more than four hours total in a day; frequent pushing and pulling with the lower left extremity; occasionally climbing ramps or stairs, balancing, stooping, crouching, crawling; frequently kneeling; never climbing ladders, ropes, or scaffolds; avoiding concentrated exposure to extreme temperatures or vibration; avoiding even moderate exposure to hazards like machinery and unprotected heights; and only frequently reaching, bilaterally.

(Tr. at 40, Finding No. 5)

At step four, the ALJ found that Claimant is unable to perform past relevant work. (Tr. at 44, Finding No. 6) At the final step, the ALJ found that in addition to the immateriality of the transferability of job skills, Claimant's age, education, and RFC indicated that there were jobs that exist in significant numbers in the national economy that Claimant can perform. (Tr. at 45, Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability since January 21,

2016 through the date of the decision. (Tr. at 46, Finding No. 11)

**Claimant's Challenges to the Commissioner's Decision**

Claimant has asserted several grounds supporting his argument that the ALJ's unfavorable decision did not comply with legal standards.

First, the ALJ failed to properly evaluate the opinion provided by Claimant's treating orthopedist, Nick L. Zervos, M.D., under the factors espoused by the Regulations; the vocational expert testified that pursuant to the limitations opined by Claimant's treating source, he would be precluded from all work. (ECF No. 14 at 5-8)

Second, the ALJ's evaluation of the intensity, persistence, and limiting effects of Claimant's symptoms on his functional limitations was deficient because the ALJ did not clearly articulate his reasoning for finding that Claimant's allegations were inconsistent with the record. (Id. at 8-9)

Third, the ALJ did not address Claimant's mental impairments, even though the record demonstrates he had been treated for depression and anxiety; this resulted in a flawed RFC assessment because it does not consider the impact of Claimant's mental impairments on his functioning. (Id. at 9-10)

Because of these errors, Claimant argues the final decision is not supported by substantial evidence and asks the Court to remand this matter to correct these errors. (Id. at 10)

In response, the Commissioner contends that the ALJ gave the proper weight to Dr. Zervos's opinion, to the extent it was supported by the evidence of record; the ALJ provided greater limitations in Claimant's RFC assessment than those found by State agency medical consultants. (ECF No. 15 at 7-8) The ALJ also appropriately evaluated Claimant's subjective

statements against the evidence of record, and provided examples from the evidence that substantiated his findings, and articulated his reasons for his conclusions in compliance with legal standards. (Id. at 8) Finally, the Commissioner argues that Claimant did not allege any mental impairments when he applied for benefits, that there is no evidence that Claimant's mental impairments were severe at step two, and that the record shows he was treated for his mental complaints at most during follow-up appointments for his physical conditions. (Id. at 8-9)

The Commissioner contends the final decision is supported by the substantial evidence and asks this Court to affirm. (Id. at 9)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

The Medical Evidence:

In May 2011, Claimant injured his right wrist and left elbow when he fell playing basketball. (Tr. at 321) He was diagnosed with fracture of the right ulna styloid and nondisplaced fracture of the left radial head. (Tr. at 323, 327) As a result, he had surgery to his right wrist, and his left elbow was treated non-operatively at the time with steroid injection therapy, but Claimant thereafter underwent an arthrotomy in June 2012. (Tr. at 385, 393-394, 414, 443, 469)

Claimant was released to perform full duty work in September 2011 with respect to his right wrist injury, and told in August 2012, after his left elbow arthrotomy, that he could return to work in three weeks. (Tr. at 402, 448)

In September 2013, Claimant underwent an arthroscopy procedure for a lateral meniscus

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

tear to the left knee. (Tr. at 597)

Claimant continued to work until around July 2016 when he was terminated from his employment, after his alleged disability onset date. (Tr. at 733) In January 2016, he complained of increasing pain and discomfort in his left hindfoot and ankle (worse with activity). (Tr. at 469) Claimant underwent a left subtalar fusion in January 2016, performed by Nick L. Zervos, M.D. (Tr. at 457, 467) Claimant continued to treat for these pain complaints during the relevant period, with medication management. (Tr. at 654)

Dr. Zervos completed a check-off disability form on Claimant's behalf in July 2017, concluding that, during an eight-hour workday, Claimant could sit four hours total; stand one hour total; walk one hour total; lift/carry up to ten pounds occasionally; frequently reach bilaterally; occasionally push/pull bilaterally; occasionally climb stairs/ramps and kneel; never climb ladders/scaffolds, balance, stoop, crouch, or crawl; continuously be exposed to humidity/wetness, dusts/odors/fumes/pulmonary irritants; and occasionally operate a motor vehicle, and be exposed to extreme cold/heat and vibrations. (Tr. at 637-642) Although requested on the form, Dr. Zervos did not identify any medical or clinical findings to support his assessment. (Id.)

Claimant also intermittently complained of anxiety and depression, and was treated with medication management from his other physical management or primary care providers. (Tr. at 654, 765-766) In May 2017, during a follow-up appointment for his psoriatic arthritis, Claimant's psychiatric examination was negative for stress, anxiety, depression, and agitation. (Tr. at 736) As recently as December 2017, during another follow-up appointment for his psoriatic arthritis, an examination of Claimant's mood and affect showed that he was in no acute distress. (Tr. at 671)

Regarding his psoriatic arthritis, Claimant had been treating for this condition since approximately August 2013, which has been successfully treated with Humira and a cortisone injection. (Tr. at 469, 482, 491, 505, 630, 673, 677, 680, 780)

State Agency Medical Consultants' Opinions:

At the initial level of review, in June 2016, Dr. Hedy Mountbatten-Windsor reviewed Claimant's claim for benefits and opined that he did not have a severe physical impairment. (Tr. at 117-120) At the reconsideration level of review in August 2016, after reviewing Claimant's claim, Dr. Pedro F. Lo opined that he had the physical residual functional capacity to perform medium work limited to: standing/walking a total of four hours in an eight-hour workday; sitting six hours in an eight-hour workday; frequently kneeling; occasionally climbing ramps/stairs, balancing, stooping, crouching, and crawling; never climbing ladders/ropes/scaffolds; avoiding concentrated exposure to extreme cold/heat, and vibration; and avoiding even moderate exposure to hazards (such as machinery and heights). (Tr. at 127-129)

Claimant's Statements and Testimony:

Claimant stated on forms filed in conjunction with his application for benefits that his social activities include attending two church services a week with his wife and children; going to his mother's house; and shopping with his wife and children when he feels "decent." (Tr. at 249)

At the administrative hearing, Claimant testified that after he fractured his right hand and elbow during a basketball game, he returned to work at Ethan Allen in the warehouse, however, he was accommodated to the extent that he was not expected to lift day to day – previously, he had to lift at least a 100 pounds or more. (Tr. at 99) He stated he still does not have full rotation of his elbow. (Tr. at 105) Regarding his ankle fusion, Claimant testified that he still has shooting pains

10

and that it swells and that he can't be on it for long periods of time. (Tr. at 100) If he sits too long, then his back hurts because the pain in his foot runs into his back. (Id.) He was told by his doctors that there wasn't anything they could do for his ankle to make it better. (Tr. at 100-101)

Claimant stated that his pain makes it hard for him to sleep sometimes, and he had to start taking sleeping medicine, although it doesn't help all the time. (Tr. at 103) After he had surgery and returned to work, his wife would have to come to his car to help him get out because he could barely walk to the door, and before his surgery, she'd put him in a wheelchair to get into the house because he hurt so bad. (Id.) He estimated he could stand or sit for about ten to fifteen minutes, and sit for about twenty minutes. (Tr. at 109)

Claimant testified that he has difficulty driving because of his hands. (Tr. at 101) He can't pick up anything heavy because it just causes shooting pain. (Tr. at 105) He stated that his psoriatic arthritis primarily affects his hands, elbow and legs. (Tr. at 104) He said Humira helps the arthritis in his hands and elbow, but does nothing for his left foot. (Id.) Claimant testified that his right foot does not have pain, but his toes "just scroll up like sausages" due to the arthritis. (Tr. at 105) Overall, Claimant admitted the Humira "helped a good bit as far as clearing up the psoriasis." (Id.)

Claimant testified that he lives with his wife and two kids, aged 12 and 6. (Tr. at 101) His wife is employed as a teacher. (Tr. at 102) Claimant stated he has no household chores, but he used to do the laundry, take out the trash, sweep, mop, and do dishes. (Id.) He also used to mow the yard and weed eat, but now has his brother, mother and wife take care of the yard work. (Id.) His wife also helps him step into the shower because of his foot pain. (Tr. at 105) His wife will also help him put his shoes on because of his hand. (Tr. at 106) Claimant stated he used to walk after

11

work, until he got arthritis, and now he can't do that or play with his kids outside because of the pain in his feet and back. (Tr. at 110)

Claimant testified that he has depression because he is unable to work and earn money. (Tr. at 106) He enjoyed the work he used to do. (Id.) He stated his temper is very short and he can't take a lot of people around; he gets mad at his kids for little things. (Tr. at 107) He also has trouble concentrating. (Id.) He takes pills for these issues and they help some. (Id.) His depression has gotten worse since his grandfather passed away a year ago. (Tr. at 109-110)

Claimant stated that he props his feet up to relax, but if he sits too long his back hurts. (Tr. at 108) He spends his time watching TV with his two cats; the cats help him feel a little better. (Id.)

Vocational Evidence:

Subsequent to the administrative hearing, the ALJ forwarded interrogatories to a vocational expert. (Tr. at 313-316) The ALJ requested that the vocational expert assume an individual of Claimant's age, education, and work experience who was restricted to light work with the following additional limitations: standing/walking a total of four hours in an eight-hour workday; sitting six hours in an eight-hour workday; frequently kneeling, pushing/pushing with the left lower extremity, and reaching (bilaterally); occasionally climbing ramps/stairs, balancing, stooping, crouching, and crawling; never climbing ladders/ropes/scaffolds; avoiding concentrated exposure to extreme cold/heat, and vibration; and avoiding even moderate exposure to hazards (such as machinery and heights). (Tr. at 127-129) The vocational expert stated that, despite those limitations, such an individual could perform representative light work as a cashier, ticket taker, and storage facility rental clerk. (Tr. at 316)

The vocational expert also considered the limitations endorsed by Dr. Zervos, that if the individual could sit for no more than four hours total in a day; stand for no more than one hour in an eight hour day; walk for no more than one hour in a day; and never climb ladders or scaffolds, balance, stoop, crouch, or crawl (Tr. at 312, 639-640), then no jobs at the competitive employment level would remain (Tr. at 316).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

Evaluating Opinion Evidence:

13

20 C.F.R. § 404.1527 governs the SSA's criteria for evaluating opinion evidence; per § 404.1527(a)(1):

> Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

Under § 404.1527(c)(1), more weight is given to an opinion provided by a physician who examines a claimant than to a non-examining physician. With respect to the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2).[2] Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(c)(2). If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(c)(2). Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of

---

[2] The treating source rule has since been eliminated, effective March 27, 2017, however, because this claim predated this rule change, the pertinent Regulations in effect at the time apply. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5853 (Jan. 18, 2017).

14

20 C.F.R. § 404.1527 governs the SSA's criteria for evaluating opinion evidence; per § 404.1527(a)(1):

> Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

Under § 404.1527(c)(1), more weight is given to an opinion provided by a physician who examines a claimant than to a non-examining physician. With respect to the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2).[2] Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(c)(2). If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(c)(2). Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of

---

[2] The treating source rule has since been eliminated, effective March 27, 2017, however, because this claim predated this rule change, the pertinent Regulations in effect at the time apply. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5853 (Jan. 18, 2017).

fact, and to resolve conflicts of evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole

to determine whether the Commissioner's conclusions are rational. <u>Oppenheim v. Finch</u>, 495 F.2d

396, 397 (4th Cir. 1994).

The ALJ acknowledged Dr. Zervos was "[C]laimant's orthopaedist" and that he submitted

a "Medical Source Statement" in July 2017. (Tr. at 44) The ALJ noted that Dr. Zervos opined that

Claimant could occasionally lift and carry up to ten pounds; sit for four hours at a time without

interruption for a total of four hours in an 8-hour workday; and stand and/or walk for an hour at

one time, for a total of one hour each in an 8-hour workday; that Claimant did not require a cane

to ambulate and that Claimant could use his free hands to carry objects; that Claimant could

frequently reach bilaterally; occasionally push and pull bilaterally; and occasionally operate foot

controls with the left foot; that he could occasionally climb ramps and stairs and kneel and never

climb ladders or scaffolds, balance, stoop, crouch and/or crawl; that Claimant could never be

exposed to unprotected heights or moving mechanical parts; and that Claimant can occasionally

operate a motor vehicle, be exposed to extreme cold, heat, or vibrations. (Tr. at 44, 637-641)

Finally, the ALJ noted Dr. Zervos concluded that Claimant

> could perform activities like shopping, ambulate without using a wheelchair,
> walker, or two canes or two crutches[3]; could use standard public transportation;
> climb a few steps at a reasonable pace with the use of a single hand rail; prepare a
> simple meal and feed himself; care for his personal hygiene; sort, handle and use

---

[3] The ALJ provided the following footnote in his review of the opinion evidence:

> The undersigned notes, however, that the claimant indicated on the "Function Report" submitted in
> May 2016 that he used a wheelchair when he must walk "a distance longer then [sic] 10-20 feet"
> and he made no explanation for the use of the wheelchair in his July 2016 "Function Report"
> (Exhibits 3E, page 9; and 8E, page 9). The claimant also made reference to using a wheelchair while
> grocery shopping in both "Function Reports" (Exhibits 3E, page 6; and 8E, page 6). There is no
> indication that a wheelchair had been ordered or prescribed for the claimant by any of his physicians.

(Tr. at 44, n.1; Tr. at 251, 281, 248, 278)

paper files; but he could **not** walk a block at a reasonable pace on rough or uneven surfaces.

(Tr. at 44, 642) (**bold** in original) Ultimately, the ALJ gave Dr. Zervos's opinion "partial weight in light of the fact that it is more restrictive than is warranted by the objective medical evidence of record." (Tr. at 44)

Earlier in his decision, the ALJ reviewed not only Claimant's statements in his application forms and hearing testimony (Tr. at 40-41), but also the medical evidence predating the alleged onset date including the follow-up reports concerning his left elbow impairment and the x-rays taken in 2015 of his left ankle impairment (Tr. at 41-42, detailed *supra*), and recognized "that while these x-rays precede the alleged onset date, they are helpful in terms of evaluating the longitudinal record of the claimant's impairments. (Tr. at 42) The ALJ noted that Dr. Zervos ordered a CT scan in May 2016 of Claimant's left ankle impairment (Tr. at 42, 660) and subsequently ordered him off work from June 16, 2016 through September 16, 2016 (Tr. at 42, 658). The ALJ further noted that another CT scan in September "demonstrated a solid fusion." (Tr. at 44, 657) Following an office visit with Dr. Wassim S. Saikali (Claimant's treating rheumatologist), where Claimant reported experiencing pain in his left ankle that worsened with prolonged standing, the ALJ noted Dr. Zervos referred Claimant to another orthopaedist for a second opinion in light of the worsening pain. (Tr. at 42, 779) From this evidence, the ALJ determined Claimant was limited to "a reduced range of light work" as provided in the resulting RFC assessment, *supra*. (Tr. at 42)

The ALJ also considered the medical records from Dr. Saikali, specifically noting that although as of February 2016 the physician "declared the claimant's psoriatic arthritis to be in remission, clinically" (Tr. at 43, 505), but also acknowledged that the psoriatic lesions returned in

16

May 2017 and in February 2018, which Dr. Saikali believed was due to stress. (Tr. at 42, 737, 786) Lastly, the ALJ considered Claimant's obesity, noting that his physicians advised him "to lose weight as 'this is probably what is going to help him the best.' " (Tr. at 43, 734, 786)[4]

With respect to the other opinion evidence of record, the ALJ noted that at both the initial and reconsideration levels of review, Drs. Mountbatten-Windsor and Lo, respectively, neither medical consultant found Claimant's impairments to be severe. (Tr. at 43-44) The ALJ gave Dr. Mountbatten-Windsor's opinion partial weight given the evidence warranted greater restrictions (Tr. at 43, 115-118); the ALJ gave Dr. Lo's opinion partial weight, finding it internally inconsistent because it placed physical restrictions on Claimant despite finding his impairments non-severe (Tr. at 43-44, 127-129).

It is clear that the ALJ's discussion of the opinion evidence with the other evidence of record shows that the ALJ gave a thorough consideration of Dr. Zervos's opinion and compared his findings with the other evidence of record, which is clearly the intent of the pertinent Regulations, *supra*. To the extent that Dr. Zervos provided an opinion as it related to Claimant's work-related capabilities, it is well known that the Regulations specifically reserve such determinations solely to the Commissioner, and any opinions with respect to same do not enjoy any special significance. See 20 C.F.R. § 404.1527(d)(2) and (3). Finally, with respect to the "good reasons" provided by the ALJ for not giving Dr. Zervos's opinion controlling weight, the ALJ has discharged his duty pursuant to Section 404.1527(c)(2) and provided an adequate explanation allowing for meaningful review. See, <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th Cir. 1983).

---

[4] The ALJ referenced treatment records from Dr. Saikali.

In sum, the undersigned **FINDS** that the ALJ's evaluation of the opinion evidence provided by Dr. Zervos is supported by substantial evidence.

<u>Evaluation of Symptoms in Disability Claims:</u>

Claimant also asserts that the ALJ's credibility analysis is unsupported by substantial evidence because it consists of only a conclusory statement without any further explanation how he found Claimant's allegations inconsistent with the record. (ECF No. 14 at 8)

Social Security Ruling ("SSR") 16-3p[5] clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs that adjudicators use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. <u>See</u>, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of

---

[5] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p and therefore governed the ALJ's decision herein. <u>See</u>, SSR 16-3p, 2016 WL 1131509. The new Ruling eliminates the use of the term "credibility" from SSA policy because the Regulations do not use that term: "we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." <u>See</u>, 2016 WL 1119029, at *1.

all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

Moreover, it is well known that credibility determinations are properly within the province of the adjudicator and beyond the scope of judicial review. Hays v. Sullivan, 907 F.2d 1453, 1456

(4th Cir. 1990); <u>Davis v. Colvin</u>, 3:13-CV-23399, 2015 WL 5686896, at *7 (S.D.W. Va. Sept. 8, 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.")

Here, the ALJ first considered Claimant's application for disability insurance benefits noting that he alleged he was unable to work due to his severe impairments. (Tr. at 40, 209-210) The ALJ then considered Claimant's hearing testimony, specifically that his left ankle caused him pain all the time, that the pain was distracting, that it made it difficult to sleep at night, and that his medication did not always quiet the pain at night. (Tr. at 40) The ALJ noted that Claimant's wife had to help him get out of the car with the use of a wheelchair after work prior to his surgery, and that he was unable to return to work because of the lifting involved. (Tr. at 40-41) The ALJ noted Claimant's testimony concerning his psoriatic arthritis and that Humira injections worked for his hands and elbow but not his left foot. (Tr. at 41) It was further noted that due to arthritis, Claimant's toes on his right foot swell. (<u>Id</u>.) The ALJ noted Claimant injured his wrist and elbow from a fall while playing basketball and although his ankle was fused, he stated it would swell and cause him pain. (<u>Id</u>.)

After properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms, and found that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (<u>Id</u>.)

Next, the ALJ discussed the medical records, first recognizing that "claimant's allegations are not supported by the objective medical evidence of record." (<u>Id</u>.) As noted *supra*, the ALJ observed that Claimant fractured both wrists and the left elbow radial head in May 2011 and that

he underwent several procedures to repair his right wrist, his elbow was treated non-operatively, and then he followed up with a course of physical therapy. (Tr. at 41, 329-331, 385, 392, 402) The ALJ noted that after having utilized all his physical therapy appointments, Claimant was discharged to a home exercise program. (Tr. at 41, 393, 402) The ALJ then acknowledged that Claimant's treating physician discharged him from his care, releasing him back to "full duty" as his lead position in the shipping department at Ethan Allen in September 2011. (Tr. at 41, 402)

The ALJ acknowledged that the medical record demonstrated that Claimant continued to have reduced range of motion and pain in his left elbow and following additional treatment, and by January 2013, his limitation reportedly did not "bother him", and he "has painless range of motion", but providers "want him to just use his bilateral upper extremities as often as he can" and "we did not put any limitations on him." (Tr. at 41-42, 453) The ALJ then considered the medical evidence concerning the x-rays of Claimant's right foot in 2015 and his subsequent treatment, discussed *supra*.

Finally, the ALJ determined that "[C]laimant's allegations are not corroborated by the objective medical evidence, and they are unsupported by his demonstrated level of activities of daily living." (Tr. at 44)

It is noted that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., No. 09–417, 2010 WL 2730622, at *17 (E.D.

Va. June 3, 2010) (quoting <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." <u>Id</u>.

Given the conflicting evidence consisting of Claimant's allegations of pain and other symptoms with the objective and other evidence of record, the ALJ is solely responsible for resolving the conflict; the issue before the Court is not whether Claimant is disabled, but whether the ALJ's finding is supported by substantial evidence and was reached based upon a correct application of the relevant law. See <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1995). The ALJ provided an adequate review that included not only Claimant's testimony, but also the objective medical evidence of record and other evidence of record.[6] It is significant that no physician of record, including Claimant's treating orthopedists and rheumatologist, found him disabled, but found he was capable of some level of work. In short, the ALJ provided a fairly thorough and adequate review of Claimant's subjective complaints, reconciled them with the medical and other evidence of record, and ultimately determined that his symptoms did not limit him to the extent alleged.[7]

The undersigned **FINDS** that the ALJ's subjective symptoms analysis complied with the pertinent Regulations and controlling case law and is based upon substantial evidence. The undersigned further **FINDS** the ALJ's discussion of the objective and other evidence of record in his evaluation of Claimant's statements regarding the intensity, persistence, and limiting effects of

---

[6] As noted in footnote 3, *supra*, the ALJ considered Claimant's statements from his Function Reports.

[7] <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." (quoting <u>Craig</u>, 76 F.3d at 589)).

his symptoms, and that the ALJ's conclusion that Claimant's statements were inconsistent with the evidence of record complied with the applicable law and supported by substantial evidence.

<u>Failure to Consider Mental Impairments and the RFC Assessment:</u>

At steps four and five of the sequential analysis, the Regulations mandate that an ALJ must determine a claimant's RFC for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." <u>See</u> SSR 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider a claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545. "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." <u>Id</u>. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments." <u>Ostronski v. Chater</u>, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. <u>See</u> 20 C.F.R. § 404.1546.

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

<u>Diaz v. Chater</u>, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

As noted *supra*, Claimant takes issue with the RFC assessment because none of his mental impairments were considered, and that an adjudicator is obligated to consider the combined effects

23

of his impairments, be they severe or non-severe. (ECF No. 14 at 9-10) The Commissioner contends that the ALJ appropriately determined Claimant's mental impairments were not severe, and points out that Claimant did not allege any mental impairment in his application for benefits. (ECF No. 15 at 8-9; Tr. at 228) There is no question that the ALJ never mentions any of Claimant's alleged mental impairments in the written decision. Although the record contains no specialized mental health treatment, there is no dispute that the medical records show that Claimant was diagnosed with depression and anxiety and received medication to treat these conditions by his primary care providers. (Tr. at 776-778, 771-773, 768-770, 765-767)[8]

Moreover, Claimant specifically testified that he suffers from depression and admitted that "I told my wife I wish I wasn't here and she could find somebody else that can make some money." (Tr. at 106) He also testified that he has a "very short" temper, that he "can't take a lot of people around", that he has "trouble concentrating", that the reason he got two cats was to help with his "depression and nerves", and that his grandfather's passing "ain't helping depression none." (Tr. at 106-108, 109-110) Significantly, the ALJ observed that Dr. Saikali believed Claimant's psoriatic lesions returned because of "stress" (Tr. at 43). Because Claimant's testimony regarding his mental impairments is supported by the medical evidence, there is sufficient evidence of a mental impairment to place the ALJ on notice[9], and thus, he was obligated to follow the "special technique" set forth in 20 C.F.R. § 401.1520a, *supra*. See Elswick v. Colvin, 2015 WL 5476121 (S.D.W.Va. Sept. 17, 2015) (Copenhaver, J.) Further, as mental impairments are considered "non-

---

[8] These records are dated October 19, 2016, April 17, 2017, and August 3, 2017 respectively. It is also notable that a treatment note from Dr. Zervos dated July 19, 2017 indicated, "[c]heck with his family doctor for anxiety and depression medications, which he needs." (Tr. at 654)

[9] "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe[.]" See 20 C.F.R. § 404.1545(a)(2).

exertional limitations," 20 C.F.R. § 404.1569a, they must be considered in the ALJ's determination of the claimant's RFC even if they do not independently constitute a severe impairment under step two. See Id. § 404.1545.

Accordingly, the undersigned **FINDS** that the ALJ's RFC determination is not supported by substantial evidence to the extent it fails to consider the effects of Claimant's mental impairments.[10]

Finally, the undersigned further **FINDS** that in light of the ALJ's deficient analysis of the mental impairment evidence of record in the RFC assessment, the final decision denying Claimant's application for benefits is not supported by the substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Claimant's motion to the extent that he requests remand (ECF No. 13), **DENY** the Commissioner's request to affirm the decision below (ECF No. 15), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings in order to allow the ALJ to consider the effects of Claimant's mental impairments.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District

---

[10] The undersigned notes that although Claimant asserted that the vocational expert opined Claimant would be incapable of competitive employment under the ***physical*** limitations endorsed by Dr. Zervos (ECF No. 14 at 7), as discussed *supra*, the ALJ appropriately evaluated Dr. Zervos's opinion. Thus, the ALJ was not obligated to adopt the treating orthopaedist's limitations in his RFC assessment, but only craft one that fairly sets out all of a claimant's impairments. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). Nevertheless, to the extent the RFC failed to address Claimant's ***mental*** impairments, the RFC assessment was erroneous.

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: April 6, 2020.



Omar J. Aboulhosn
United States Magistrate Judge